David Wm. Engelman, SBA #004193
Patrick A. Clisham, SBA #023154
**Engelman Berger, P.C.**
3636 North Central Avenue
Suite 700
Phoenix, Arizona 85012
Ph: (602) 271-9090
Fax: (602) 222-4999
Email: dwe@engelmanberger.com
Email: pac@engelmanberger.com

Attorneys for Hospitality Partners of Wyoming, Inc.

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>ARIZONA LIZANATAY, LLC, *et al.*<br><br>Debtors. | Chapter 11<br><br>Case No. 2:10-bk-33205-RJH<br>(Jointly Administered)<br><br>**OBJECTION TO CONFIRMATION OF DEBTORS' CHAPTER 11 PLAN OF REORGANIZATION**<br><br>Hearing Date: January 11, 2011<br>Hearing Time: 10:00 a.m. |

Debtors have proposed a joint plan of reorganization (the "Plan") that provides the Debtors' current equity holders with exclusive benefits, opportunities, and equity in the Reorganized Debtor for which such holders are not paying reasonable value, while leaving unsecured creditors holding the bag. Moreover, the Plan is fatally flawed in that it is actually comprised of multiple individual debtor plans that cannot independently meet the confirmation standards of 1129(a) and (b) and therefore cannot be confirmed. Accordingly, Hospitality Partners of Wyoming, Inc., a creditor and party-in-interest herein ("HP"), therefore objects to the confirmation of the Plan[1] and requests that the Court as promptly as possible order that the Plan fails to meet Bankruptcy Code requirements for confirmation.

This Objection is supported by the following Memorandum of Points and Authorities, and the entire record in this matter.

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Plan.

{02791.001/00216246.DOC /}

DATED this 4th day of January, 2011.

ENGELMAN BERGER, P.C.

By: /s/ SBA #004193
David W. Engelman
Patrick A. Clisham
3636 North Central Avenue, Suite 700
Phoenix, Arizona 85012
Attorneys for Hospitality Partners of Wyoming, Inc.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. SUMMARY OF LEGAL AND FACTUAL GROUNDS PRECLUDING PLAN CONFIRMATION.

As a general matter, the Supreme Court has analyzed many of the same issues before the Court in this case, and set forth requirements that Debtors simply have not met. *See Bank of America National Trust and Savings Assoc. v. 203 North LaSalle Street Partnership ("LaSalle")*, 526 U.S. 434 (1999). *LaSalle* establishes the following principle regarding a "new value" plan that squarely governs this case:

> ....plans providing junior interest holders with exclusive opportunities free from competition and without benefit of market valuation fall within the prohibition of § 1129(b)(2)(B)(ii).

526 U.S. at 458. As aptly summarized, ..." *LaSalle* holds that a new value corollary might exist, but if it does, it requires either exclusivity to be terminated or some kind of opportunity for competing bids to contribute the new value." Hon. Randolph J. Haines, "Confirming a Chapter 11 Plan," 2006 Norton Bankruptcy Law Seminar, p. 79. The Debtors' proposed joint Plan provides insiders of the Debtors will retain ownership and control of the Debtors and their assets through a "new value" contribution and denies the Debtors' unsecured creditors – who will only receive a fraction of their claims -- a similar opportunity.

In addition to failing to comply with *LaSalle*, Debtors' Plan does not satisfy confirmation standards under 11 U.S.C. § 1129(a), and does not satisfy "cram-down" requirements under 11 U.S.C. § 1129(b), in that:

{02791.001/00216246.DOC /}

2

1. Violates the *absolute priority rule* by allowing existing equity to retain control and valuable post-confirmation benefits without fully satisfying the Debtors' claims or paying appropriate value for their post-confirmation equity interests.
2. The Plan plainly gerrymanders for "cram-down" votes by fabricating classes of claims for parties holding executory contracts that are assumed by the terms of the Plan and not entitled to Plan classification and treatment.
3. The Plan, which does not substantively consolidate the Debtors, improperly categorizes all other unsecured creditors in a single class of unsecured creditors, without regard to which particular unsecured creditor is a creditor of which particular debtor.
4. The Plan is not in the best interests of Creditors in that unsecured creditors such as HP would receive more in an orderly liquidation than they will under the Plan.

## II. DEBTORS AND THE AMENDED PLAN.

### A. Introduction.

The Debtors filed their voluntary petitions under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on October 10, 2010. The Debtors consist of a series of five single asset real estate entities whose assets primarily included hotel properties in Arizona, Colorado, and Wyoming and their affiliated management and holding companies. The Debtors have been operating their properties as debtors-in-possession since the Petition Date. The Debtors' cases have been consolidated for joint administration. Dkt. 36.

HP is the third position secured lender to Rawlins, holding a properly perfected lien on the Rawlins hotel, and an unsecured creditor as to Arizona, Hart Street and Grand Valley. As of the Petition Date, Rawlins was indebted to HP in the principal amount of $475,000. The Debtors' Disclosure Statement takes the position that the Rawlins hotel is completely encumbered by lenders

senior to HP and that HP is unsecured as to Rawlins.[2] If true, HP is the Debtors' single largest unsecured creditor.[3]

### B. Debtors' Ownership Structure.

The Debtors are owned directly or indirectly by Dallas and Christina Bligh and Douglas Theone. Theone holds 5% and 10% interests in Rawlins and Grand Valley, respectively, while the Blighs own Holdings 50/50, which is the equity holder of all remaining equity of the operating entities and hotels. The Blighs derive their living from the operations of the hotels through management fees earned by Management and paid by the hotels. Under the current management agreements between the Debtors, Management is entitled to monthly fees from the hotels totaling $22,140, plus 10% of the net operating income of the hotels and expense reimbursement. Disclosure Statement at page 28. In addition, Management generates approximately $2,000-$7000, plus 10% of net operating income and expense reimbursement from non-debtor hotels. The Debtors project that Management will pay the Blighs and its few other employees $300,000 per year during the first two years of the Plan. *Id.*

### C. Debtors' Plan of Reorganization.

On November 29, 2010 the Debtors filed the current Plan. The Plan is a joint plan of reorganization. Although the Plan combines all of the Debtors' general unsecured creditors into one class (Class 17), the Plan does not seek to substantively consolidate the Debtors' estates. The Plan contemplates the reorganization of the Debtors as going concerns, each continuing to hold its prepetition properties. The Plan and the Debtors' Plan obligations are to be funded by the ongoing business operations of the Debtors. The Plan does not propose to pay creditors in full. Instead, the Plan is a "new value" Plan that proposes the Blighs purchase the equity in the Reorganized Debtors in exchange for a $200,000 cash contribution and the Contributed Real Property Interests -- defined as

---

[2] HP disputes the values included in the Debtors' liquidation analysis attached to the Disclosure Statement as Exhibit 3 and reserves all rights to challenge the Debtors' evidence as to such values and present additional evidence refuting such values.

[3] On December 29, 2010, the Debtors' counsel estimated that HP's claim represents approximately 46% of the Debtors' estimated $1,029,772.58 in total unsecured claims treated in Class 17.

{02791.001/00216246.DOC /}

4

"liens to be contributed by the Blighs on the separately held residence located at 14355 Pecos St., Westminster, Colorado 80023 and 75 Cloud Peak Drive, Buffalo, Wyoming 82834" with a purported value of "not less than $250,000." Plan at pages 5, 11-12. The Plan is silent as to any "new value" contribution that will be made by Theone or what interests, if any, he will retain following Plan confirmation.[4] *Id.*

The Plan separately classifies each of the Debtors' secured creditors in Classes 1-12, 14-16. With respect to unsecured creditors, the Debtors have separately classified the "cure" claims of the holders' assumed franchise and management agreements (BWII – Classes 9 and 13, CHII – Class 10, LaQuinta – Class 11, Super 8 – Class 12). Plan at Art. IV., § B. All other unsecured creditors are lumped into Class 17, regardless of the nature of the claim and without regard to the Debtor against whom the claim arises. *Id.* The Plan proposes to pay secured creditors the value of their secured claims over the life of the Plan, holders of assumed contracts will be paid their cure claims, and unsecured creditors will be paid a pro rata share of $200,000, distributed over 5 years. *Id.*

### III. PLAN CONFIRMATION IS PRECLUDED ON THE LAW AND FACTS OF THIS MATTER.

#### A. The Debtors' Burden.

Debtors have the burden of proof in showing that all the requirements for confirmation set forth in Bankruptcy Code § 1129 are met. In the Ninth Circuit, a debtor must prove by a preponderance of the evidence that: (a) the Plan satisfies all requirements of the confirmation provisions; or (b) that the only condition not satisfied is the requirement that all impaired classes accept the Plan; and, if so (c) that the Plan satisfies the cramdown alternative, which requires that the Plan not discriminate unfairly against objecting impaired classes and is fair and equitable towards each objecting class. *See In re Ambanc La Mesa Ltd. P'ship*, 115 F.3d 650, 653 (9th Cir. 1997). Debtors cannot meet their burden with respect to the Plan.

---

[4] HP objects to Theone retaining any interest in the Reorganized Debtor.

{02791.001/00216246.DOC /}

5

## B. The Plan Violates *LaSalle*.

As summarized above, the Supreme Court has weighed in on the issues surrounding insider control of a chapter 11 case where the insiders do not show that they have tested the market or solicited competing offers. In *LaSalle*, the debtor sought to confirm a plan of reorganization that allowed existing equity to retain control and ownership of the post-confirmation debtor. In order to try to avoid an absolute priority rule violation, existing equity proposed to make a new value contribution. 526 U.S. at 440. While much of the *LaSalle* decision is dedicated to a discussion of the absolute priority rule and whether a new value contribution exception to that rule exists, the Court deferred making such a determination and instead held that the debtor's plan could not be confirmed on the basis that the debtor's creditors were not given an opportunity to compete for the equity of the reorganized debtor or propose a competing plan of reorganization. *Id.* Particularly troubling for the Supreme Court was that the debtor's existing equity had a *valuable* right to use the exclusivity period to propose "a plan under which the benefit of equity ownership may be obtained by no one but old equity." *Id.* at 454-455 ("before the Debtor's Plan was accepted no one else could propose an alternative one, and after its acceptance no one else could obtain equity in the reorganized entity. At the moment of the plan's approval the Debtor's partners enjoyed an exclusive opportunity that was in no economic sense distinguishable from the advantage of the exclusively entitled offeror or option holder"). The Supreme Court held that "plans providing junior interest holders with exclusive opportunities free from competition and without the benefit of market valuation, fall within the prohibition of § 1129(b)(2)(B)(ii)." *Id.* at 457-458 ("Under a plan granting an exclusive right, making no provision for *competing bids* or competing plans, any determination that the price was top dollar would necessarily be made by a judge in bankruptcy court, whereas *the best way to determine value is exposure to the marketplace*) (emphasis added). See, *In re Situation Management Systems, Inc.*, 252 B.R. 859, 863 (Bankr. D. Mass. 2000) (a new value plan must both include an auction mechanism and exclusivity being terminated.

Debtors' Plan proposes to vest all of the equity of the Debtors with the Blighs in exchange for a $200,000 cash contribution and the pledge of a "lien" in certain properties with speculative value.

In exchange, the Blighs will retain real and personal properties with a fair market value of at least $15,065,000 and subject to less than $13 million in liens. *See* Disclosure Statement at Exhibit 3. In addition, the Blighs will continue to generate substantial personal income through the collection of their ongoing management fees and the $300,000 annual compensation paid by Management to the Blighs and its other limited employees. *See* Plan at page 13. These equity interests and benefits have been provided to the Blighs on account of their control over the Debtors during the Plan process to the exclusion of the Debtors' prepetition creditors and without the benefit of any market exposure or opportunity for creditors to participate or propose alternatives to the Plan. Accordingly, the Plan is unconfirmable under the standards proscribed by the Supreme Court in *LaSalle*.

### B. The Plan Violates the Absolute Priority Rule.

The absolute priority rule, which has in part been codified in Section 1129(b), forbids confirmation of a plan over the objection of an impaired class of claimants unless junior claimants will not receive or retain any property on account of their junior claims. *LaSalle*, 526 U.S. at 442. This confirmation requirement is a strict one, and "creditors may insist on priority of payment: secured creditors must be paid in full before unsecured creditors retain any interest, and unsecured creditors must be paid off before equity holders retain an interest." *Wilkow v. Forbes, Inc.*, 241 F.3d 552, 554 (7th Cir. 2001).

The Plan is a "new value" plan as it proposes to vest the equity interests in the Reorganized Debtors in existing equity without paying all creditors' claims in full. HP has not consented to this treatment and objects to the Plan. The Ninth Circuit has held that a "new capital contribution by the former equity holders (1) must consist of money or property which is freely traded in the economy..." *In re Ambanc La Mesa Limited Partnership*, 115 F.3d 650, 654-655 (9th Cir. 1996). In order to constitute "new value" the old equity holders must contribute capital that is new, substantial money or money's worth, necessary for a successful reorganization *and reasonably equivalent to the value or interest received. In re Bonner Mall*, 2 F.3d 899, 908 (9th Cir. 1993).

As described above, the Blighs are purchasing more than $2 million in equity in the hotels and a stream of income of at least $300,000 per year going forward for the mere $200,000 in cash they are

{02791.001/00216246.DOC /}

7

contributing under the Plan and the $250,000 in "liens" they are contributing to the Reorganized Debtors. While it is not clear from the Plan or the Disclosure statement exactly what the nature of the "liens" are that are to be contributed is, it is clear that the "liens" on the Blighs' personal residences are not cash or "property that is freely traded in the economy." Moreover, even if the Court were to consider the full extent of the "new value" contribution offered by the Blighs, it would have to conclude that such amounts are not "reasonably equivalent" to the value and interests the Blighs will receive under the Plan (substantial immediate equity and cash income). Accordingly, the Plan violates the absolute priority rule and cannot be confirmed.

### C. The Debtors' Classification Scheme is Not Valid.

The Bankruptcy Code only allows for confirmation of a plan over the objection of an impaired class of claims if such plan does not "discriminate unfairly" against the dissenting class of impaired claimants. *See* 11 U.S.C. § 1129(b)(1). In the Ninth Circuit, a clear rule has developed that a debtor cannot classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan. *In re Barakat*, 99 F.3d 1520 (9th Cir. 1996); *see also Oxford Life Ins. Co. v. Tucson Self-Storage, Inc. (In re Tucson Self-Storage)*, 166 B.R. 892 (9th Cir. BAP 1994); *Montclair Retail Ctr. L.P. v. Bank of the West (In re Montclair Retail Ctr.)*, 177 B.R. 663, 665-66 (9th Cir. BAP 1995) (following *Tucson Self-Storage).* Separate classification absent a business or economic justification, is an impermissible classification in violation of § 1122(a). *Tuscon Self Storage* at 897-898; *see also In re Boston Post Rd.,* 21 F.3d 477, 483(2nd Cir. 1994) (Second Circuit held that separate classification for the purpose of preventing the undersecured creditor from rejecting the plan is contrary to the principles underlying the Bankruptcy Code, that is, that creditors holding greater debt should have a comparably greater voice in reorganization).

The Debtors' Plan separately classifies the "claims" of parties to executory contracts that are to be assumed by the Debtors pursuant to the Plan. *See* Plan at Article IV, Classes 9-13. None of these so-called "claims" are legitimately classified or treated under the Plan. Indeed, a claim resulting from the Debtors' assumption of an executory contract are "cure" claims and are required to be treated as administrative priority claims under the express terms of the Bankruptcy Code. *See* 11

U.S.C. §§ 365(b)(1)(A) and 503(b)(1). Administrative claims must be paid in connection with confirmation of the Debtors' plan, unless creditors holding such claims consent to alternative treatment. Regardless, such creditors are not entitled to separate classification and may not vote or constitute an accepting impaired class for purposes of cramdown under § 11129(b). 11 U.S.C. § 507(a)(2). Moreover, to the extent that any such creditors are entitled to a claim that may be voted, such claim would necessarily be an unsecured claim and would not be properly classified separately.

The Debtors' proposed separate classification and artificial "impairment" of cure claims in Classes 9-13 pure gerrymandering. There is no authority that would allow the Debtors to assume executory contracts and then seek to separately classify and treat trade cure claims as impaired creditors for purposes of cram-down. Accordingly, Debtors' classification scheme must be disapproved.

### D. The Debtors Cannot Individually Achieve Plan Consent.

To satisfy Section 1129(a), a debtor must either have the consent of all classes, *see* 11 U.S.C. § 1129(a)(8)(B), or have an impaired accepting class. *See* 11 U.S.C. § 1129(a)(10); *In re YL West 87th Holdings, LLC*, 423 B.R. 421, 444 n.48 (Bankr. S.D.N.Y. 2010). Although the Debtors' Plan lumps all of the creditor classes into one plan, the Debtors have not moved for substantive consolidation. Without substantive consolidation, each Debtor must separately satisfy the plan confirmation requirements set forth in 11 U.S.C. § 1129(a). *See In re N.S. Garrott & Sons*, 43 B.R. 13, 18 (Bankr. E.D. Ark. 1984). The Debtors cannot simply lump their assets together in order to circumvent confirmation obstacles they would face if forced to file "stand alone" plans.

As described above, HP is an unsecured creditor of Arizona, Hart Street and Grand Valley by virtue of their guaranty liabilities and a secured and unsecured creditor of Rawlins by virtue of its third position loan on the Rawlins hotel. When the Debtors are appropriately disconnected and the votes are appropriately counted, HP will be the largest single unsecured creditor of each Arizona, Hart Street, Grand Valley, and Rawlins estates and will essentially control the unsecured class of creditors. HP opposes the Plan and has voted its Class 8 and Class 17 claims against confirmation.

{02791.001/00216246.DOC /}

9

Unless the Debtors can identify a legitimately separately classified class of creditors for each such Debtor that has voted in favor of the Plan, the Court cannot confirm the Plan as to all Debtors.

### E. Creditors Are Better Served By and Orderly Liquidation.

Section 1129(a) of the Bankruptcy Code provides in pertinent part:

> The court shall confirm a plan only if all of the following requirements are met: * * * (7) With respect to each impaired class of claims …— (A) each holder of a claim … of such class— * * * (ii) will receive or retain under the plan on account of such claim … property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under Chapter 7 of this title on such date ….

*Id.*

The Debtors' own liquidation analysis suggests that the current fair market value ($15,065,000) of the Debtors' assets exceeds the value of the secured claims by $1,626,337.00. See Plan at Exhibit 3. On information and belief, the Debtors' total unsecured claims pool (Class 17) now consists of only $1,029,772.58 (see note 3 *supra*). Debtors' liquidation analysis presumes a fire sale by a chapter 7 trustee at a 33% discount of fair market value that simply would not be required or pursued under the facts of these cases. Indeed, the Debtors project that they will be able to operate and maintain the hotels based on current cash flows. *See* Disclosure Statement at Exhibit 2. A chapter 7 trustee could do the same pending a going concern liquidation of the hotels after a sufficient marketing period to achieve a closer to fair market value recovery for the estates. Such an outcome is clearly better than the $200,000 in total that the Debtors are proposing to pay unsecured creditors over next five years. Moreover, as discussed above, when the Debtors' plans are appropriately separated, it becomes clear that there is significant equity in certain of the Debtors' hotel properties.

### IV. CONCLUSION.

Based on the foregoing, the Plan should not be confirmed by this Court.

DATED this 4th day of January, 2011.

**ENGELMAN BERGER, P.C.**

By: ___/s/ SBA #004193___
    David W. Engelman
    Patrick A. Clisham
    3636 North Central Avenue, Suite 700
    Phoenix, Arizona 85012
    Attorneys for Hospitality Partners of Wyoming, Inc.

COPY of the foregoing
transmitted as indicated
this 4th day of January, 2011, to:

Office of the U.S. Trustee
230 N. First Avenue
Suite 204
Phoenix, AZ 85003
**Via Facsimile: 602-514-7270**

Joseph D. Dorsey
Christopher R. Kaup
Tiffany & Bosco, PA
2525 E. Camelback Road
Third Floor
Phoenix, AZ 85016
Email: jdd@tblaw.com
Email: crk@tblaw.com
Attorneys for the Debtor Arizona Lizanatay, L.L.C.

Edward K. Bernatavicius
United States Trustee
230 N 1st Avenue, Suite 204
Phoenix, AZ 85003
Email: edward.k.bernatavicius@usdoj.gov
Attorneys for U.S. Trustee

Bryan A. Albue
Sherman & Howard
2800 N. Central Avenue, #1100
Phoenix, AZ 85004-1043
Email: balbue@shermanhoward.com
Attorneys for PMC Commercial Trust

{02791.001/00216246.DOC /}

11

ENGELMAN BERGER, P.C.
3636 North Central Avenue, Suite 700
Phoenix, Arizona 85012

Barbara Lee Caldwell
Caldwell Padish & Wells
7333 E. Doubletree Ranch Road, Suite 255
Scottsdale, AZ 85258
Email: bcaldwell@cpwlawyers.com
Attorneys for Maricopa County

Robert P. Harris
Quarles & Brady LLP
One Renaissance Square
2 N. Central Avenue
Phoenix, AZ 85004-2391
Email: robert.harris@quarles.com
Attorneys for IMG Note I, LLC

Wesley Denton Ray
Polsinelli Shughart PC
City Scape Plaza
One E. Washington St., #1200
Phoenix, AZ 85004
Email: wray@polsinelli.com
Attorneys for American National Bank

Christopher C. Simpson
Stinson Morrison Hecker LLP
1850 N. Central Avenue, #2100
Phoenix, AZ 85004
Email: csimpson@stinson.com
Attorneys for Dallas Bligh

Stephen C. Stapleton
Dykema Gossett PLLC
1717 Main Street, Suite 4000
Dallas, TX 75201
Email: sstapleton@dykema.com
Attorneys for La Quinta Franchising, LLC

Warren J. Stapleton
Osborn Maledon
2929 N. Central Avenue, Suite 2100
Phoenix, AZ 85012
Email: wstapleton@omlaw.com
Attorneys for Luke Buse

Lazonia Clark
Chase Paymentech Solutions, LLC
14221 Dallas Parkway, Bldg II
Dallas, Texas 75254
Email: lazonia.clark@chasepaymentech.com

/s/ Cynthia L. Worne

{02791.001/00216246.DOC /}